**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
BENS BBQ, INC. on behalf of itself and all others
similarly situated doing business as Bobbique,

                Plaintiff,

        -against-

COUNTY OF SUFFOLK,

                Defendant.
------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
CV 19-3854 (SJF) (ARL)

**LINDSAY, Magistrate Judge:**

      The plaintiff, Bens BBQ, Inc. ("Bens"), commenced this putative class action on June 18, 2019, against the defendant, County of Suffolk (the "County"), asserting claims pursuant to 42 U.S.C. §§ 1983 and 1985.  Bens alleges that Article II of Chapter 290 of the Suffolk County Administrative Code (the "False Alarm Law") authorizes the County to impose fines on alarm owners without giving them recourse to challenge the County's determination.  To this end, Bens claims that the County violated its rights pursuant to the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment's prohibition on excessive fines, the Takings Clause of the Fifth Amendment and the New York State common law regarding the imposition of governmental fees.  Before the Court, on referral from District Judge Feuerstein, is the County's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the undersigned respectfully recommends that the motion be granted, in part.

## BACKGROUND

      The following facts are drawn from the complaint and are accepted as true for purposes of the instant motion.  *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).  These facts, however, do not constitute findings of fact by the Court.  *See Colvin v. State University*

*College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

### A.        The Plaintiff

Bens is a New York corporation operating the Bobbique restaurant in Patchogue, New York.  Compl. ¶ 8.  On July 7, 2018, Bens received a false alarm fee notice from the Suffolk County Police District ('SCPD").  *Id.* ¶ 27.  The County demanded payment of $1,410.00 for what it claimed were false alarms occurring on September 11, 2016, September 14, 2016, October 17, 2016 and November 19, 2016.  *Id.* ¶¶ 27-8.  Bens challenged the imposition of fine, in writing, as permitted by the False Alarm Law, but never received a response from the Police Commissioner.  *Id.* ¶ 29.

### B.        The False Alarm Law

In December 2015, the County adopted the False Alarm Law.  *Id.* ¶ 12.  The False Alarm Law requires any person who owns, leases, rents, or uses an alarm system or makes an alarm system available for use by his/her or its agents, employees, representatives, tenants or family within the SCPD to obtain a permit from the SCPD for the operation of said alarm system.  *Id.* ¶ 13.  The law also imposes fees on alarm owners for alarm triggers that the police deem "false alarms." *Id.* ¶ 14.  Section 290-6 of the False Alarm Law defines a "false alarm" as:

> [a]n alarm signal to the Department activated by causes or events other than the commission or attempted commission of an unlawful act or emergency which the alarm system is designed to detect.  This shall include, but not be limited to, mechanical failure, accidental tripping, misoperation, malfunction, misuse or neglect of the alarm system, but shall not include alarms caused by earthquakes, high winds, verifiable utility failures or external causes beyond the control of the alarm owner or alarms caused by smoke, fire or carbon monoxide.

Chapter 290 Suffolk Adm. Code, Article II, § 290-6.

Nonresidential alarm owners with proper permits are subject to warnings and fees for

false alarm notifications issued by the SCPD within one year of the anniversary date of the issuance of the permit. Bianco Aff. Ex. B. The schedule for warnings and fees is graduated:

| 1st false alarm | Written warning only |
| 2nd false alarm | Written warning only |
| 3rd false alarm | $100 |
| 4th false alarm | $150 |
| 5th false alarm | $200 |
| 6th false alarm | $250 |
| 7th false alarm | $300 |
| 8th false alarm | $350 |
| 9th false alarm | $400 |
| 10th and subsequent false alarms | $500 |

*Id.*[1] If an alarm owner fails to procure a permit, the following schedule applies:

| 1st false alarm | $100 |
| 2nd false alarm | $100 |
| 3rd false alarm | $200 |
| 4th false alarm | $200 |
| 5th false alarm | $200 |
| 6th false alarm | $300 |
| 7th false alarm | $300 |
| 8th false alarm | $400 |
| 9th false alarm | $500 |
| 10th and subsequent false alarms | $500 |

*Id.*

Bens takes issue with the fact that all alarm owners, including those without alarm permits, are subject to the false alarm fees. *Id*. § 290-9. Bens also complains that the False Alarm Law provides no requirement for service of process or notice of the levying of a false alarm fee on an alarm owner other than requiring such notice to be in writing. *Id.* In addition, Bens asserts that the SCPD is the sole arbiter of what constitutes a "false alarm" and there is no hearing or proceeding in which an alarm owner can enter a plea of not guilty, submit testimony or evidence, appear before an impartial judge, or cross examine witnesses. Compl. ¶¶ 18-9. The

---

[1] A different schedule is in effect for residential buildings.

SCPD simply sends a letter to an alarm owner demanding payment for false alarms allegedly triggered by the owner's alarm. *Id*. ¶ 34.

Pursuant to the County's Administrative Code, an alarm owner's only recourse is to appeal the imposition of a false alarm fee, in writing, to the Police Commissioner of the SCPD. *Id*. ¶ 20. The False Alarm Law does not set forth any criteria, rules or standards of proof for the Police Commissioner to follow when he or she reviews or renders a decision on an appeal of a false alarm fee. *Id*. ¶ 21. Nor is the Police Commissioner required to develop a record before rendering a decision on an appeal. *Id*. ¶ 22.

### C.    The Small Claims Action

At some point after Bens filed an appeal, but before it received a response from the Police Commissioner, the County commenced a small claims action against Bens to collect the fine. Compl. ¶ 30. The complaint in the small claims action stated:

> The Defendant has been issued fines related to false alarms at [its] address pursuant to Suffolk County Code Chapter 290 Article II Section 290-9. The defendant has failed to pay the fines and associated fees.

*Id.* According to Bens, the small claims court would not consider its arguments with respect to the underlying events leading up to the false alarm fines since the fines were already levied. In fact, the court held that Bens' only recourse was to appeal to the SCPD, which Bens had done. *Id*. ¶ 32. Thus, the small claims court only considered that the fines had not yet been paid and awarded the County $1,710.00. *Id*. ¶ 33. Bens has since satisfied that judgment. *Id.*

### DISCUSSION

### A.    Standards of Law

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a

plausible set of facts sufficient "to raise a right to relief above the speculative level." *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002). In addition, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the

complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted). [2]

The County contends that a number of grounds exist to dismiss the complaint. Each of those grounds will be addressed in turn.

### B.     Procedural Due Process

The County first asserts that it afforded Bens adequate procedural due process with respect to the False Alarm Law, and thus, Bens' Section 1983 procedural due process claim should be dismissed. Def.'s Mem. at 3. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (internal quotation marks and citation omitted). Section 1983, however, "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted); *see Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). The threshold question, therefore, is whether the plaintiff has adequately alleged a violation of a cognizable federal right. *Albright,* 510 U.S. at 271 ("The first step in any such claim is to identify the specific constitutional right allegedly infringed").[3]

In this case, Bens asserts that the County violated its Fourteenth Amendment right to procedural due process when it imposed an improper fine on Bens without giving Bens an adequate means to challenge it. Compl. ¶ 46. The Due Process Clause of the Fourteenth

---

[2] Following these guidelines, the undersigned has considered the complete False Alarm Law annexed to counsel for the County's affirmation.
[3] The County has included a *Monell* argument in its memorandum. Def.'s Mem. at 12. The Court agrees with Bens that the *Monell* argument is misplaced since the False Alarm Law is unquestionably an official government policy.

Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To allege a Section 1983 claim based on the denial of either procedural due process, a plaintiff must first allege a constitutionally protected property interest. *See Harrington v. County of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010). Second, a plaintiff must show that the defendant has deprived him of that right. *Jones v. Cty. of Suffolk*, 236 F. Supp. 3d 688, 694 (E.D.N.Y. 2017) (quoting L*ocal 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)). Finally, a plaintiff must show that the deprivation was affected without due process. *Id.* Nonetheless, analyzing a procedural due process claim typically involves only a two-step process: "(1) the court examines whether [the defendant] deprived plaintiff of a constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate." *Id.* (citing *Shakur v. Selsky,* 391 F.3d 106, 118 (2d Cir. 2004)).

Under the first step in the analysis, "'[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.'" *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). In this case, the County does not dispute that Bens has been deprived of a property interest, that being, the $1,710.00 it was required to pay as a fine under the False Alarm Law. *See e.g., Rackley v. City of New York*, 186 F. Supp. 2d 466, 480-81 (S.D.N.Y. 2002) (parking fines and vehicle seizures deprived plaintiff of a property interest). However, the County does dispute that the procedures for appealing the fine were inadequate. Accordingly, the Court turns its attention to the "lack of process" alleged by Bens.

"The fundamental requirement of procedural due process is the opportunity to be heard at

a meaningful time and in a meaningful manner." *Jones,* 236 F. Supp. 3d at 694. To this end, Bens alleges that the False Alarm Law has no requirement for service of process or notice of the levying of a false alarm fee other than requiring such notice to be written. Compl. ¶¶ 17-21. Bens further alleges the County does not give alarm owners an opportunity to schedule a hearing before it imposes the fines. *Id.* ¶ 19. Based on these two grounds, Bens contends that the procedures followed by the County are constitutionally inadequate. *Id.* ¶ 31. The undersigned disagrees.

As a threshold matter, Bens has offered no support for its assertion that the County's failure to follow a specific procedure for service of process of the notice is violative of the Fourteenth Amendment. Indeed, the fundamental requirement of due process in any proceeding "is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950). In other words, "[t]he notice must be of such nature as [to] reasonably . . . convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Id.* (internal citations omitted). Here, Bens does not allege the County failed to provide it with the false alarm notice or an opportunity to object to the fine. In fact, the complaint makes clear that Bens received notice and submitted a written appeal to the Police Commissioner pursuant to the procedures set forth in the False Alarm Law. *Id.* ¶ 20. *See Brody v. Vill. of Port Chester*, 509 F. Supp. 2d 269, 279 (S.D.N.Y. 2007) (citing *Lopes v. United States*, 862 F. Supp. 1178, 1188 (S.D.N.Y.1994) ("... [W]here there is actual notice there is no due process violation.")). Bens' real issue, which is addressed below, is that the Police Commissioner failed to respond to its appeal. Accordingly, the Court rejects Bens' first two arguments.

Bens also asserts that alarm owners should be provided a pre-deprivation hearing before the County imposes the fine. *Id.* ¶ 19. However, as Bens acknowledges in its memorandum, "[d]ue process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'" *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (quoting *Brody v. Vill. of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005)). To determine when a pre- or post-deprivation hearing is required, courts generally follow the factors established in *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976)). *Id.* Those factors include (1) the private interest, (2) the risk of erroneous deprivation and (3) the government's interest. *Id.* Weighing the *Mathews* factors, the undersigned finds that the County was not required to provide Bens with a hearing before it imposed the false alarm fine.

To begin with, the private interest at stake here is not enormous. Although Bens was fined $1,410, that fine was based on four separate incidents. The fines for false alarms range between $100 and $500 per incident. Bianco Aff. Ex. B. In fact, alarm owners who properly procure permits receive two warnings before any fine is imposed. *Id.* In addition, the County has a strong interest in controlling its law enforcement resources. Finally, the risk of an erroneous deprivation is mitigated by the opportunity to challenge the notice in writing and the availability of a post-deprivation hearing.

Indeed, Bens acknowledges the availability of a written appeal combined with an Article 78 proceeding, but argues, nonetheless, that Courts have found similar process to be insufficient. However, Bens' reliance on several cases including *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 1021, 25 L. Ed. 2d 287 (1970) and *Luedeke v. Village of New Paltz*, 63 F. Supp. 2d 215 (N.D.N.Y.) is misplaced. In *Goldberg,* New York City residents receiving financial aid under

federally-assisted program of Aid to Families with Dependent Children commenced a lawsuit challenging adequacy of procedures for notice and hearing in connection with termination of such aid.  After the Southern District of New York entered a judgment in favor of the plaintiffs, the case was appealed to the Supreme Court.  On appeal, the Supreme Court held that procedural due process required that a pre-termination evidentiary hearing be held before public assistance payments to welfare recipient could be discontinued.  Specifically, Justice Brennan noted:

> The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard.  It is not enough that a welfare recipient may present his position to the decision maker in writing or second-hand through his caseworker.  Written submissions are an unrealistic option for most recipients, who lack the educational attainment necessary to write effectively and who cannot obtain professional assistance.  Moreover, written submissions do not afford the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important.  Particularly where credibility and veracity are at issue, as they must be in many termination proceedings, written submissions are a wholly unsatisfactory basis for decision.  The second-hand presentation to the decisionmaker by the caseworker has its own deficiencies; since the caseworker usually gathers the facts upon which the charge of ineligibility rests, the presentation of the recipient's side of the controversy cannot safely be left to him.  Therefore[,] a recipient must be allowed to state his position orally. Informal procedures will suffice; in this context due process does not require a particular order of proof or mode of offering evidence.

Goldberg, 397 U.S. at 268–69.  The facts in this case are quite different.  Although Bens complains that the Police Commissioner failed to address its appeal and lacks neutrality, there is nothing in the complaint to suggest that, as a general rule, a written challenge is an unrealistic option for alarm owners.  Nor has the plaintiff suggested that credibility or veracity are at issue in most challenges to false alarm notices.

Similarly, in *Luedeke*, which is heavily relied upon by Bens, the Court found that the Village had never informed the plaintiff that he could contest the validity of a snow removal ordinance despite the availability of a Village-created mechanism for an appeal.  Instead, the

Village provided Luedeke with a notice apprising him that he was in violation of the ordinance and indicating that the failure to pay the fine by a date certain would become a lien upon the premises. As such, the Court found that while the Village had a mechanism for objecting to the fine, its failure to apprise the plaintiff of that mechanism resulted in a denial of a meaningful opportunity to be heard. In this case, although the Police Commissioner ultimately failed to timely respond to Bens' appeal, the notice issued by the County did apprise Bens that it could appeal the fine in writing.

Accordingly, the Court turns its attention to Bens' complaint that the Police Commissioner failed to respond to its appeal and even if he or she had responded, the False Alarm Law lacks a specific criterion for how he or she should have reviewed that appeal. The Police Commissioners' determination, or in Bens' case, the lack thereof, is not left completely unchecked. As the County points out, Bens could have commenced an Article 78 proceeding in the nature of mandamus to compel the Police Commissioner to consider the appeal or in the nature of a writ of certiori to review an arbitrary determination. *See Vapne v. Eggleston,* No. 04 CIV. 565 (NRB), 2004 WL 2754673, at *4 (S.D.N.Y. Dec. 1, 2004) (finding that access to post-deprivation process was adequate to meet the requirements of constitutional due process). Moreover, the Court finds that an Article 78 procedure would have been adequate in this case. Contrary to Bens' characterization, the alleged due process violation was not caused by "a faulty state procedure," but rather by the failure of a particular Police Commissioner to respond to Bens' written appeal. *C.f., HVT, Inc. v. Port Auth. of New York & New Jersey,* No. 15CIV5867MKBVMS, 2018 WL 3134414, at *13 (E.D.N.Y. Feb. 15, 2018), report and recommendation adopted, No. 15CV5867MKBVMS, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018) (finding that resort to an Article 78 proceeding was not adequate process where the onus

would be placed on each plaintiff seeking to force the City to justify its seizure and retention of a vehicle to bring a separate civil action).

Finally, the plaintiff's argument that the definition of false alarm is "so vague" that it denies due process rights to those subject to the law is without merit.[4] The Supreme Court has recognized two independent grounds upon which a statute's language may be so vague as to deny due process of law. *Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y.*, 660 F.3d 612, 620–21 (2d Cir. 2011). "First, a law violates due process 'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.'" *Id.* (citing *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000)). "Second, a law is unconstitutionally vague "'if it authorizes or even encourages arbitrary and discriminatory enforcement.'" *Id.* With respect to the first ground, Bens contends that it is unclear what constitutes "an emergency which the alarm is designed to detect." The complete sentence to which Bens refers states that a "false alarm" is "[a]n alarm signal to the [SCPD that is] activated by causes or events other than the commission or attempted commission of an unlawful act or emergency which the alarm system is designed to detect." Chapter 290 Suffolk Adm. Code, Article II, § 290-6. As the Second Circuit noted, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language. Rather, regulations may embody 'flexibility and reasonable depth,' and 'satisfy due process as long as a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require.'" *Cunney*, 660 F.3d at 621 (internal citations omitted). The Court finds that the term "emergency" satisfies that

---

[4] The Court notes that Bens could also have raised the constitutional challenges to the law itself in an Article 78 proceeding. *See Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996).

standard.

In a similar vein, Bens asserts that given the lack of clarity with respect to the term emergency, the SCPD may act arbitrarily in its enforcement of the law. This argument disregards the fact that the False Alarm Law also provides a long list of occurrences that the "factfinder" can consider as a false alarm: "mechanical failure, accidental tripping, misoperation, malfunction, misuse or neglect of the alarm system." Chapter 290 Suffolk Adm. Code, Article II, § 290-6. It also provides a list of occurrences that the Count will not consider; " [alarms] caused by earthquakes, high winds, verifiable utility failures or external causes beyond the control of the alarm owner or alarms caused by smoke, fire or carbon monoxide." *Id.* Accordingly, notwithstanding Bens' suggestion that homeowners do not often know what triggered their alarms, Bens has not stated a procedural due process claim based on the vagueness of the law, and thus, the Court respectfully recommends that the County's motions to dismiss the complaint be granted to the extent it seeks to dismiss the procedural due process claim.

### C.     Substantive Due Process

The County also argues that to the extent the first cause of action alleges a substantive due process claim, that claim should be dismissed. Generally, "[s]ubstantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Cunney v. Bd. of Trustee of Village of Grand View, N.Y.,* 660 F.3d 612, 626 (2d Cir. 2011) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995)). However, when a court is being asked to analyze facial challenges regarding whether a governmental entity has a proper justification for a statute or regulation, a rational basis review applies. *Winston v.*

*City of Syracuse*, 887 F.3d 553, 566 (2d Cir. 2018). Accordingly, in this case, "[t]o establish a

substantive due process violation [Bens] must [state] both (1) that [it] has an interest protected by

the Fourteenth Amendment, and (2) that the statute, ordinance, or regulation in question is not

rationally related to a legitimate government interest." *Id.* Bens has failed to do so.

Here, Bens acknowledges that the County has a legitimate interest in regulating false

alarms. Pl.'s Mem. at 12. However rather than addressing if the County means of enforcing that

law is rational, Bens simply states it is irrational to deprive people of procedural due process.

Bens substantive due process argument should have been focused on whether the fines imposed

by the County on alarm owners are rationally related to its interest in preventing false alarms.

Nothing in the complaint, or in the plaintiff's memorandum, suggests that the fines are unrelated

to the interest being protected. *C.f., Winston*, 887 F.3d at 567 (finding City's scheme that sought

to collect payment on landlords' bills from tenants who had no legal obligation for those bills

failed the rational-basis review). Accordingly, the Court further recommends that the plaintiff's

substantive due process claim be dismissed.

### D. The Eighth Amendment

The County next argues that the second cause of action, alleging a violation of the Eighth

Amendment, must be dismissed as the fines imposed under the False Alarm Law are not the type

of "fines" contemplated by the Amendment. The Eighth Amendment provides that "excessive

fines [shall not be] imposed." U.S. Const., Amend. 8. The word "'fine' . . . mean[s] a payment

to a sovereign as punishment for some offense." *Dubin v. Cty. of Nassau*, 277 F. Supp. 3d 366,

401 (E.D.N.Y. 2017) (citing *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492

U.S. 257, 265, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989)). Therefore, the "Excessive Fines

Clause" "'limits the government's power to extract payments, whether in cash or in kind, as

punishment for some offense.'" *Id.* (citing *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998)).

In this Circuit, a two-step inquiry is used to determine whether a fine is excessive under the Eighth Amendment. *Id.* (citing *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016) (footnote omitted), cert. denied, —— U.S. ——, 137 S. Ct. 1223, 197 L. Ed. 2d 462 (2017)). "First, a court must 'determine whether the Excessive Fines Clause applies at all.'" *Id.* (citing *Viloski*, 814 F.3d at 109. The Excessive Fines Clause applies if the forfeiture can be characterized, at least in part, as punitive. *Id.* (citing *Viloski*, 814 F.3d at 109 and *Bajakajian*, 524 U.S. at 327–28, 118 S. Ct. 2028)). Forfeitures in which the defendant is personally liable are typically considered punitive. *Id.* "'In contrast, purely 'remedial' forfeitures—i.e., those in rem forfeitures intended not to punish the defendant but to compensate the Government for a loss or to restore property to its rightful owner—fall outside the scope of the Excessive Fines Clause.'" *Id.*

Once a court determines that the Excessive Fines Clause applies, a court must next "'determine whether the challenged forfeiture is unconstitutionally excessive.'" *Id.* (citing *Viloski*, 814 F.3d at 109 and *Bajakajian*, 524 U.S. at 334, 118 S. Ct. 2028)). Generally, a forfeiture that is grossly disproportional to the gravity of a defendant's offense is considered unconstitutionally excessive. *Id.* The Second Circuit has articulated a four-factor test to aid courts in determining whether the challenged forfeiture is excessive. *Id.* To this end, court must determine the following:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Id.* (quoting *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015)). In addition, the Second Circuit has indicated that courts may also consider whether the forfeiture would deprive the defendant of his future ability to earn a living. *Id.* (citing *Viloski*, 814 F.3d at 111 (citation omitted).

In this case, the County contends that Bens has failed to state a claim under the Eighth Amendment because the false alarm fees imposed by the County are not "fines" as contemplated by the language of the Amendment. Specifically, the County argues, without legal support, that the fee it imposes is not a punishment, but rather a means by which the County can recoup lost revenues associated with the administration of the alarm permit registration program and the cost of responding to false alarms. Although the primary goal of the false alarm fee maybe remedial in nature, the false alarm fee still serves a punitive purpose and is, thus, sufficient to bring it within the purview of the Excessive Fines Clause. *See Paroline v. United States,* 572 U.S. 434, 456, 134 S. Ct. 1710, 1726, 188 L. Ed. 2d 714 (2014) (while the primary goal of restitution under § 2259 is remedial or compensatory, it also serves punitive purpose).

The County further argues that even if the Court considers the false alarm fees to be within the purview of the Excessive Fines Clause, such fees do not run afoul of the Eighth Amendment because they are not excessive. The "[c]onstitutional analysis of punishment starts with the sin." *Sanders v. Szubin,* 828 F. Supp. 2d 542, 553 (E.D.N.Y. 2011). In this case, the offense the Court is being asked to consider is the triggering of a false alarm which it claims causes an enormous waste of police resources. In addition, the County points out that the Court is not considering a single violation. Rather, the complaint asserts that the County demanded payment of $1,410.00 for four false alarms occurring on September 11, 2016, September 14, 2016, October 17, 2016 and November 19, 2016. Compl. ¶¶ 27-8. As such, the County argues

that the fine was not disproportionate to "Bens' sin." Moreover, the County asks the Court to

consider the fact that the False Alarm Law was enacted to help the County recoup lost revenues

associated with the alarm permit registration program and that the fees imposed represent on a

fraction of what it actually costs to respond to a false alarm.  While Ben's claim maybe thin

given the relatively low fee structure, the Court cannot state as a matter of law that the $1,410

penalty was proportionate to the gravity of Bens' offense.  Accordingly, the Court finds that

Bens has stated a cause of action pursuant to the Excessive Fines Clause.

### E.     The Fifth Amendment

The County also argues that the false alarm fees do not constitute an unconstitutional

taking in violation of the Fifth Amendment.  Specifically, the County contends that the Fifth

Amendment does not apply in this case because the property being "taken" is a fine associated

with is a duly enacted legislation designed to lessen the burden on SCPD's resources.  "The Fifth

Amendment guarantees that no one will 'be deprived of life, liberty, or property, without due

process of law; nor shall private property be taken for public use, without just compensation.'"

*Dubin*, 277 F. Supp. 3d at 394 (quoting U.S. Const. amend. V).[5]  The protection is made

applicable to the states through the Fourteenth Amendment.  *Id.* (citing *Weaver v. Brenner*, 40

F.3d 527, 534 (2d Cir. 1994)).  "To plead a taking under the Fifth (or Fourteenth) Amendment, a

plaintiff must allege that (1) plaintiff possessed a valid property interest; (2) there was a taking of

that property interest under color of state law; and (3) the taking was without just compensation."

*Id*

---

[5] The Court notes that the *Dubin* court, relying on *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985)), held that a plaintiff "has not suffered a violation of the Just Compensation Clause until [he] has unsuccessfully attempted to obtain just compensation through the procedures provided by the State." *Dubin*, 277 F. Supp. 3d at 394.  The state-litigation requirement of *Williamson County* was overruled by the Supreme Court in 2019.  *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019).  Accordingly, the undersigned has not considered the state-litigation analysis of the *Dubin* court or other cases in this circuit that address the same issue.

"The Supreme Court has recognized two branches of Takings Clause cases: physical takings and regulatory takings." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (citing *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002))  "A physical taking occurs when there is either a condemnation or a physical appropriation of property." *Id.*  "A regulatory taking . . . occurs where even absent a direct physical appropriation, governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" "[T]he Supreme Court has also identified two types of regulatory action that are treated as *per se* takings for Fifth Amendment purposes and therefore require no case-specific weighing of the comprehensive plan" under the factors set forth in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978) (emphasis added).  A categorical taking occurs "(1) where a regulation 'compel[s] the property owner to suffer a physical 'invasion' of his property'; or (2) 'where regulation denies all economically beneficial or productive use of land.'" *Id.* (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)).

The fine assessed by the County for false alarms does not constitute a physical taking. Nor can it be characterized as *per se* regulatory taking for Fifth Amendment purposes. Accordingly, the Court must analyze the taking under the factors set forth in *Penn Central*.  *See Sherman v. Town of Chester,* 752 F.3d 554, 564 (2d Cir. 2014)("'Anything less than a complete elimination of value, or a total loss,' is a non-categorical taking, which is analyzed under the framework created in [*Penn Central*]")).  The first *Penn Central* factor used to determine whether the interference with property gives rise to the level of a taking is "the economic impact of the regulation on the claimant.  *Id.*  The second factor is "the extent to which the regulation has interfered with distinct investment-backed expectations." *Id.*   The third factor is the

"character of the governmental action."

In response to the first factor, Bens argues that the economic impact of the False Alarm Law is severe. Specifically, Bens asserts that it, and other alarm owners, are forced to pay "severe" fines and face potential judgment liens. Pls. Mem. at 21. With respect to the second factor, Ben's contends that alarm owners, who have invested in security systems, are likely to be deprived of the benefit of that investment because owners do not use their alarms for fear that they will be assessed with endless fines. Finally, with respect to the character of the action, Bens suggests that the False Alarm Law is simply a means of generating revenue without any relation to the real cost of administering the False Alarm Program. Accordingly, Bens argues that its Fifth Amendment taking claim should be sustained.

As previously discussed, the economic impact to Bens was the $1,410 penalty, which ultimately resulted in a $1,710.00 award in small claims court. To this end, the County is quick to point out that Ben's penalty was based on four false alarms. Indeed, while the complaint only references false alarms occuring on September 11, 2016, September 14, 2016, October 17, 2016 and November 19, 2016, the False Alarm Law provides a written warning for the 1st and 2nd false alarm at nonresidential buildings if an owner properly obtains a permit. Bianco Aff. Ex. D. Thereafter, a penalty of $100 is assessed for the 3rd false alarm. *Id.* The fees are slowly increased for subsequent false alarms until a 10th false alarm is triggered, at which point owners are charge a fee of $500 for each false alarm thereafter. *Id.* If an owner has failed to obtain a permit, there is no warning and the fees are slightly higher. In either case, the amount of the fine at issue suggests that Bens' alarm may have been triggered prior to the September 11, 2016 – the first false alarm reflected in the notice. Nonetheless, Bens' was fined $1410, so at this stage in the litigation, the Court finds that the first *Penn Central* factor weighs slightly in Bens'

favor.

The same cannot be said for the second and third factors. Bens argues that when it bought the alarm system, its reasonable expectation was that the alarm would offer a level of protection for the property. The alarm system was not removed by the County or disabled in any way. Rather, Bens suggests that it, and other alarm owners, are too fearful to turn on their alarms. This argument is too speculative, and thus, the second factor weighs in the County's favor. With respect to the third factor - the character of the government action - the *Penn Central* court stated that "'[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.* (quoting *Penn Central,* 438 U.S. at 124, 98 S. Ct. 2646 (internal citation omitted)). In this case, the County's actions are part of a public program to, among other things, address the cost of law enforcement responding to false alarms. As such, the undersigned finds that the third *Penn Central* factor also favor the County. Therefore, the Court concludes that Bens has not stated a takings claim and respectfully recommends that the third cause of action be dismissed.

**G.      Section 1985 Conspiracy**

In addition, the County asserts that Bens' Section 1985 conspiracy claim must be dismissed. Bens has asserted each of its constitutional claims under both sections 1983 and 1985. Section 1985 provides that:

> If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... the person so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42. U.S.C. § 1985(3). To allege a 1985 violation, a plaintiff must claim: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons equal protection of the laws; and (3) an act in furtherance of conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a U.S. citizen. *See Emmons v. City University of New York*, 715 F. Supp. 2d 394 (E.D.N.Y. Jun. 2, 2010). "[A] § 1985(3) violation must be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Id*. at 416 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L.Ed.2d 338 (1971)). "In other word, the intended victims must be victims not because of any malice the conspirators have toward them, but because of their membership in or affiliation with a particular class." *Id.* Nothing in the complaint suggests that Bens was targeted because of its membership in a particular class. Nor has Bens set forth any factual allegations regarding the conspiracy. Accordingly, to the extent any of the constitutional claims remain, the undersigned recommends that Bens be barred from asserting the claims under Section 1985.

### H. New York State Law - Money Had and Received

Finally, with respect to the fourth cause of action for money had and received, the County argues that the false alarm fees bear a reasonable correlation to the cost of the service provided, and thus, should be stricken. Generally, [a] claim for money[] had and received requires a . . . showing that '(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money.'" *Patchen v. Gov't Employers Ins. Co*., 759 F. Supp. 2d 241, 250 (E.D.N.Y. 2011)(quoting *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir.1984)). In fact, it is quasi-contract cause of action that will not lie when a contract governs the relationship between a plaintiff and a defendant. *Id.* (citing *Beth*

*Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.,* 448 F.3d 573,

586–87 (2d Cir. 2006)).  Although Bens does assert, in this case, that the County has received

money belonging to it and has benefitted from that money, the essence of Bens' fourth cause of

action is not based principals of equity.  In fact, Bens makes clear in its memorandum that it is

really seeking to challenge the constitutionality of the fee structure.  Thus, the Court finds that

the cause of action is mischaracterized.

With respect to the merits of that constitutional challenge, as the cases relied upon by

both parties suggest, "[f]ee setting by municipal agencies was once deemed a legislative act and

declaratory judgment was the proper means of review.  *See Valentino v. Cty. of Tompkins*, 45

A.D.3d 1235, 1236, 846 N.Y.S.2d 745 (2007)(citing *Matter of Torsoe Bros. Constr. Corp. v

Board of Trustees of Inc. Vil. of Monroe*, 49 A.D.2d 461, 463 [1975]).  "Now, however, fee

setting is correctly viewed as a quasi-legislative act of an administrative agency and the proper

review procedure depends on the nature of the challenge raised."  *Id.*  Here, Bens asserts that the

graduated fee structure is illegal because it is not reasonably related to the services provided by

the SCPD.  Pl's Mem. at 22.  Specifically, Bens alleges that each subsequent visit by a police

officer to a false alarm event is no more expensive than the previous visit, and thus, a sliding

scale is unconstitutionally impermissible.  This type of claim clearly should have been brought in

an Article 78 proceeding and not as a pendent claim for money had and received.  Accordingly,

the undersigned respectfully recommends that the fourth cause of action also be dismissed.[6]

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court

---

[6] Given the Court's determination, the fifth cause of action seeking a declaratory judgment that the False Alarm Law violated the Fifth, Eighth and Fourteenth Amendment should be dismissed except with respect to the Eighth Amendment.

on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C*., 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).


Dated: Central Islip, New York
      May 7, 2020

                                 _____/s_____
                                   ARLENE R. LINDSAY
                                   United States Magistrate Judge